The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party has requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and concluded as matters of law the following, which were entered into by the parties as
STIPULATION
1. Defendants paid compensation to plaintiff for the period shown on the Form 28B dated April 22, 1993.
In addition, the parties stipulated into evidence a notebook of medical records with an index.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner as follows
FINDINGS OF FACT
1. As of October 27, 1987 plaintiff had been employed by defendant for approximately three years as a hall nurse. Her job as a licensed practical nurse involved providing patient care at the nursing home. She sustained an injury by accident arising out of and in the course of her employment on that date when she slipped as she was turning to leave the pharmacy. Although she caught herself before she fell to the floor, she jerked her low back, injuring it.
2. Dr. Young initially treated plaintiff for what appeared to be a back strain, but she was then seen by Dr. Schulten, an orthopaedic surgeon. Her condition improved at first but worsened by the end of December, and on January 2 Dr. Schulten's partner, Dr. de Perczel, hospitalized her. Diagnostic tests revealed a large ruptured disc at L5-S1 and surgery was recommended. However, plaintiff had completed her training as a registered nurse and was scheduled to take the licensing examination, so she asked for the operation to be postponed. Dr. Schulten referred her for chiropractic care in the meantime and she improved, so he continued to treat her conservatively and did not schedule the surgery.
3. In late May 1988 plaintiff experienced a relapse of pain and had difficulty completing the rehabilitation program in which she was enrolled. She also developed problems with urination in June, so she was sent for evaluation to Dr. Chewning, an orthopaedic surgeon who specialized in back disorders. He examined her on July 14 and ordered another CT scan which revealed a large free fragment of disc material in her spinal canal. Consequently, he performed surgery on August 12, 1988 at the L5-S1 interspace to remove the disc fragment and decompress the nerves. During the operation, he observed that she had lost essentially the entire nucleus from the disc space and he was concerned that there would be further collapse of the disc space with resulting instability so that a fusion might be necessary. His concerns were later realized.
4. Plaintiff initially improved following the surgery, but she sneezed in December 1988 and experienced such pain that she fell to the floor. Additional tests were performed at that time and she was subsequently sent to a neurosurgeon and a urologist for evaluation. However, no further surgery was recommended. By July 1989 the intervertebral space appeared to be collapsing. Since her symptoms continued to worsen, Dr. Chewning ultimately recommended surgery to fuse her spine from the fourth lumbar vertebrae through the sacrum and this surgery was performed on April 23, 1990. Plaintiff obtained considerable relief from the surgery but continued to have problems.
5. Dr. Chewning released plaintiff on February 3, 1991 to do light work on a part-time basis, and she subsequently returned to work for defendant. However, she developed worse pain by early May and he then took her back out of work. Additional tests were performed which indicated that she had some mild stenosis at L4-5 and that the attempted fusion at that level might not have solidified. On July 19 he released her to very light duty work where she could sit, stand and walk as tolerated and where she would do no repetitive lifting and only occasional lifting of up to ten to fifteen pounds.
6. Plaintiff returned to work for defendant on August 13, 1991 in a light duty capacity where she made rounds with the doctors, did tuberculosis tests and served lunch trays. In August or September 1992 she took a position as a staff developer. Her duties in that position included providing orientation for new employees and providing continuing education and training for existing employees. During this time she was being treated by Dr. Marchese who was trying to provide her with pain relief using various medications and a TENS unit. He also had her evaluated by Dr. Branch to see if she would benefit from a spinal cord stimulator, but Dr. Branch thought that she had arachnoiditis and that the device would not give her much relief. Dr. Marchese then referred her for further follow-up care to Dr. Nelson, a family doctor who subsequently treated her for her recurrent flare-ups of pain.
7. By July 1993 plaintiff was having falling episodes due to her legs giving way, so she returned to Dr. Chewning. He recommended that she have an MRI, but there were delays in getting the test authorized. Defendant terminated plaintiff's employment on September 1 and apparently refused to pay for the test. However, she was eventually able to have it done and it confirmed Dr. Chewning's suspicion that she had a pseudarthrosis at L4-5 with some narrowing of the spinal canal. On October 13, 1993 when he last saw her, he recommended surgery to try again to fuse the L4-5 interspace, perhaps with instrumentation. Defendant has refused to authorize the surgery.
8. This case was originally accepted as compensable by defendant which paid compensation to plaintiff for temporary total and temporary partial disability until she returned to work in August 1991. No compensation has been paid for permanent partial disability in this case despite the fact that Dr. Chewning was of the opinion in July 1991 that she had reached maximum medical improvement. He rated her with a 30% permanent partial impairment of the back at that time.
9. In fact, plaintiff has not reached maximum medical improvement with respect to this injury. Her condition continued to progress after July 1991 until by October 1993 more surgery was advisable. Throughout that time, she was unable to perform her former work duties for defendant which required lifting and moving patients. Defendant provided work to her which was suitable to her capacity until September 1, 1993 but has failed to offer suitable work since that date. She remained unable to perform any but light sedentary work until the date of hearing on December 2, 1993.
10. The disabling condition for which Dr. Chewning has continued to treat plaintiff is a proximate result of the injury by accident giving rise to this claim. The surgery recommended by him would tend to effect a cure and give her relief.
11. This case was not defended without reasonable grounds.
* * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
CONCLUSIONS OF LAW
1. In that this case remained pending until a final award was filed, G.S. 97-47 did not apply and plaintiff was not required to prove that she sustained a change of condition in order to recover further compensation. G.S. 97-47; Giles v. Tri-State Erectors, 287 N.C. 219
(1975); Pratt v. Central Upholstery Co., Inc., 252 N.C. 716
(1960).
2. Plaintiff is entitled to additional compensation for temporary total disability at the rate of $208.01 per week for eight and six-sevenths weeks, for the period from September 2 through December 2, 1993, and continuing thereafter for as long as she remains so disabled. G.S. 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent it tended to effect a cure, give relief or lessen her disability, including the surgery recommended by Dr. Chewning. G.S. § 97-25 (before amendment).
4. Plaintiff is not entitled to have attorney's fees assessed against defendants in that it did not defend the case without reasonable grounds. G.S. 97-88.1.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following
AWARD
1. Defendants shall pay additional compensation to plaintiff for temporary total disability at the rate of $208.01 per week for eight and six-sevenths weeks, for the period from September 2 through December 2, 1993, and continuing thereafter for as long as she remains so disabled. That portion of this compensation which has accrued shall be paid in a lump sum. This award is subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including those arising from the surgery recommended by Dr. Chewning, when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
3. An attorney's fee in the amount of 25% of the compensation awarded is approved for plaintiff's counsel. He shall receive a lump sum from the accrued compensation and shall thereafter receive every fourth check.
4. Defendants shall pay an expert witness fee in the amount of $300.00 to Dr. Chewning.
5. Defendants shall pay the costs.
IT IS FURTHER ORDERED:
Plaintiff's motion to assess attorney's fees against defendant is denied.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
S/ _________________________ JOHN A. HEDRICK DEPUTY COMMISSIONER
BSB:md